## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| HERSCHEL K. BAILEY, IV, individually, and on behalf of all others similarly situated, | ) ) ) ) | No. _____ |
| Plaintiff, | ) ) | **CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SIX FLAGS ENTERTAINMENT CORP., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiff, Herschel K. Bailey, IV ("Plaintiff"), on behalf of himself and other similarly situated individuals, alleges the following, in relevant part, upon information and belief, and his own personal knowledge.

### I.  NATURE OF THE CASE

1.     This class action complaint is based upon Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA").

2.     Specifically, this action is based upon Section 1681c(g) of the FCRA, which states that:

> no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

3.    Despite the clear language of the statute, Defendant willfully chose not to comply with the FCRA.  As such, all consumers who purchased products from Defendant using a credit or debit card suffered violations of § 1681c(g), have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

## II.  JURISDICTION AND VENUE

4.    This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

5.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## III.  PARTIES

6.    Plaintiff HERSCHEL K. BAILEY, IV ("Plaintiff") is a natural person who resides in Gwinnett County in the State of Georgia,.

7.    Defendant, SIX FLAGS ENTERTAINMENT CORP. ("Defendant" or "Six Flags"), is a Delaware corporation whose principal address is 924 Avenue J. East, Grand Prairie, TX 75050, where it may be served with process.

8.    Six Flags owns and operates twenty (20) theme parks across the United States and North America.  Six Flags utilizes wholly-owned subsidiaries to conduct its business, but it directs and controls those subsidiaries, including

developing, implementing, and enforcing the policies and procedures related to credit/debit card transactions related to FACTA.

9.     Six Flags is the world's largest regional theme park company.  In 2016, Six Flags annual revenue topped $1.3 Billion dollars.  It has 42,000 employees and twenty-nine million (29,000,000) annual guests.  Six Flags will be opening parks in China and the UAE in or about 2019.    *See* http://investors.sixflags.com/investor-overview/six-flags-at-a-glance.

10.     According to Six Flags, total guest spending per-capita for the second quarter of 2017 was $41.67.  Admissions per-capita were $23.36 and in-park spending per-capita was $18.31.

## IV.  FACTUAL ALLEGATIONS

### A.     Background

11.     In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush.

12.     During the time that FACTA was being debated and voted on by Congress, Six Flags directly and indirectly employed lobbyists in Washington, D.C. such that Six Flags undoubtedly learned of FACTA's requirements and had the opportunity to participate in the legislative process prior to its enactment.

13.     In 2002, according to OpenSecrets.org, Six Flags paid the lobbying firm Williams & Jensen $140,000; the same year, the International Association of Amusement Parks & Attractions (the IAAPA) – of which Six Flags is a member –

also paid Williams & Jensen $360,000.  In 2003, the IAAPA paid Williams & Jensen to lobby on behalf of the amusement park industry.

14.    One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

15.    One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point-of-sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

16.    Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

(hereinafter, "Receipt Provision").

17.    After its enactment, FACTA provided the retail industry three years within which to comply with its requirements, mandating full compliance by December 4, 2006.

18.    The requirements were widely-publicized among retailers and the FTC.  Indeed, banks and credit card associations (*i.e.*, Visa, MasterCard, American Express, Discover, etc.) are keenly aware of the importance of truncating expiration dates as required under FACTA.  Accordingly, for years, they informed their merchants, including Defendant, about FACTA and what a company must

do to be compliant.  Visa, MasterCard, the PCI Security Standards Council (a consortium founded by Visa, MasterCard, Discover, and American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities all informed merchants, including the Defendant, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

19.    For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, then CEO of Visa USA, Carl Pascarella, explained:

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . .  The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . .

"Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein,"  PR Newswire, March 6, 2003.

20.    Within 24 hours of Visa's announcement, MasterCard and American Express also announced they were imposing similar requirements.

21.    The card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

22.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendant would have received this and subsequent Rules from Visa.

23.    Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed a law absolving all past violations of FACTA. *See* The Credit and Debit Card Receipt Clarification Act of 2007 ("The Clarification Act"), Pub. L. No. 110-241, 122 Stat. 1565 (2008).

24.    Importantly, the Clarification Act did not amend FACTA to allow publication of more than the last five digits of the card number. Instead, it simply provided amnesty for past violators up to June 3, 2008.

25.    Card processing companies continued to alert merchants, including the Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN [Primary Account Number] or the

card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as Exhibit A.

26. The vast majority of business – from large multinational conglomerates to mom and pop retailers - readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

27. One of Defendant's board members, Jon Luther, is certainly knowledgeable of FACTA's requirements. Luther, who has served on Defendant's board since May 2010, was Chief Executive Officer of Dunkin' Brands Group Inc., a quick-service restaurant franchisor whose brands include Dunkin' Donuts and Baskin-Robbins, from January 2003 to December 2009 and Chairman from March 2006 to January 2009. In January 2009, he assumed the role of Executive Chairman, and in July 2010, became the Non-Executive Chairman, a position he held until his retirement in May 2013. Luther also serves as Chairman of Arby's Restaurant Group, Inc. ("Arby's"), a privately-held quick-service sandwich chain.

Upon information and belief, Dunkin' Donuts, Baskin-Robbins, and Arby's process millions of credit and debit card transactions annually, and under Luther's management, each company enacted and maintained specific policies to ensure FACTA compliance.

28.    Luther is also uniquely aware of the dangers of theft of credit and debit card data.  In early 2017, Luther in his capacity as Chairman of Arby's learned that the credit and debit card information of over 355,000 of its customers had been stolen after malware was placed on Arby's payment systems. *See* https://www.usatoday.com/story/tech/news/2017/02/09/arbys-breach-may-have-hit-355000-credit-cards/97702594/

29.    Luther also served as Chairman for the International Franchise Association and was a member of its Executive Committee.  Notably, the IFA's website has numerous articles on the importance of FACTA compliance to franchisors and franchisees. *See* http://www.franchise.org/search/site/FACTA.

30.    Not only was the Defendant informed repeatedly that it could not print more than the last five digits of a credit or debit card number, it was also contractually prohibited from doing so.  Defendant accepts credit cards from all major card-issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

31.    As noted above, the processing companies have required that the credit card account number be redacted since 2003 and still require it.  American

Express explicitly instructed merchants, including the Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, attached hereto.

32.    Similarly, MasterCard explicitly instructed merchants, including the Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely. MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date.  In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN).  All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, attached hereto.

33.    Discover explicitly instructed merchants, including the Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

34.    Defendant is also a member of or receives information from the National Retail Federation ("NRF"), the world's largest retail trade association. Defendant's employees are members of or receive information from the NRF.

35.    The NRF provided Defendant guidance on FACTA's truncation requirements.

36.    Through the NRF, credit card merchants and other methods of notification, Defendant was aware that the purpose of FACTA is to prevent identity theft through the theft of credit and debit card numbers.

37.    On January 10, 2007, the NRF sent a memo to its members' general counsels warning that failure to suppress "credit card expiration dates or anything beyond the last five digits of a customer's credit card number on the copy of the receipt provided to the customer" was likely to result in a lawsuit.

38.    At the time of the FACTA violations identified in this Complaint and before, Defendant knew of its obligations under FACTA and the importance of the truncation requirements.

39.    Not only was Defendant repeatedly made aware of its obligations under FACTA, but it was also expressly made aware through regular bulletins, publications, and memos from retail associations, merchant banking associations, and the credit card companies that failure to comply with the truncation

requirements was illegal, as it could subject its customers, such as Plaintiff, to identity theft.

40.    Furthermore, many insurance companies providing liability insurance to businesses like the Defendant specifically negotiate exclusions to coverage for FACTA violations.

41.    Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by simply programming their card machines and devices to comply with the truncation requirement.

42.    FACTA compliance requires either dedication of internal resources or payment to third-party vendors to bring a company into compliance with FACTA.

43.    Defendant could have complied, but either recklessly failed to review their own FACTA compliance or intentionally opted to save money by not bringing its parks into compliance.

44.    On information and belief, Defendant has failed to comply with FACTA's truncations requirements at each of its United States park locations throughout the Class Period.  Yet, the Defendant's website states:

> Six Flags Entertainment Corporation is committed to conducting every aspect of its business in a responsible, honest and ethical manner.  For us, good corporate governance means *going beyond compliance*.  It means instituting and maintaining practices that represent strong business ethics and ensuring we communicate consistently, honestly and transparently with our shareholders, guests and other company stakeholders.

*See* http://investors.sixflags.com/corporate-governance/overview.

45.    Despite    knowledge    of    FACTA's    requirements, contractual requirements from credit card issuers that Defendant must be FACTA compliant, and notifications from credit card issuers and the federal government, Defendant continues to willfully disregard FACTA's requirements and to use machines or devices that print receipts in violation of FACTA.

**B.    Plaintiff's Factual Allegations**

46.    On July 20, 2017, Plaintiff incurred a charge for $29.65 dollars for goods purchased at Defendant's Six Flags Over Georgia theme park.

47.    Plaintiff paid for said goods using his personal American Express® credit card.  Upon making the payment, he was provided with an electronically - printed receipt, which displayed the last four digits of his card number *as well as the first six digits of his card number*.[1]

48.    Plaintiff has made numerous other purchases at that park using his credit card on various occasions in 2017 and preceding years.  Upon information and belief, the receipts provided to him for these transactions also collectively displayed the last four digits of his credit card, the first six digits of his account number and/or the expiration date, and the credit card's expiration date. Unfortunately, many of Plaintiff's receipts for these transactions were either retained by the sales-person to be thrown away, thrown away by Plaintiff or lost,

---

[1]Defendant accepts Visa, MasterCard, or Discover debit or credit cards, and/or American Express credit cards in the course of transacting business with persons who make purchases at Defendant's 20 locations across the United States and North America.

seen by other persons, or otherwise wound up in the possession of another person, leaving Plaintiff at increased risk for identity theft.

49.     Following his discovery of the Defendant's FACTA violation(s), Plaintiff was compelled to take various precautions to defend himself against identity-theft, including obtaining the services of a credit-monitoring/fraud-monitoring service, and contacting American Express and requesting and obtaining a replacement credit card.  These actions, while inconvenient to the Plaintiff, were nevertheless necessary measures taken by him as security against identity-thieves.

50.     Defendant operates twenty (20) theme parks and water parks in the United States, Canada, and Mexico.  Upon information and belief, the violations at issue have taken place at many if not all of Defendant's parks.

51.     Upon information and belief, it would take an individual less than thirty seconds to run a test receipt in order to determine whether the point-of-sale system was in compliance with federal law(s) and written policy requiring the numbers to be truncated.

52.     What's more, Defendant employs persons known as "Mystery Shoppers," "Secrets Shoppers" and "Undercover Shoppers," whose jobs include making purchases at Defendant's parks; yet, their job responsibilities do not include checking for FACTA compliance.  These employee-shoppers focus, *inter alia,* on loss prevention (*i.e.,* theft of Defendant's goods), rather than protecting customers.

53.    In the end, the FACTA violations at Defendant's parks were caused not by a lack of knowledge of FACTA's requirements, but because Defendant simply chose not to take any reasonable action to ensure compliance. Defendant's wanton violations are tantamount to turning over Plaintiff's physical credit card to an identity thief.

54.    Defendant's legal department, which would presumably have ultimate responsibility for ensuring the Six Flags adheres to applicable state and federal law, is tiny. The entire law department for the company consists of General Counsel Lance Balk, Assistant General Counsel, Danielle Bernthal and legal assistant Mary Roma. Commenting on the small size of the Six Flags legal team, Ms. Bernthal acknowledged she viewed it as a benefit to her career in that it allowed her: "to work with all areas of the company; engage regularly with senior executives; interact with the board; and broaden [her] experience in matters that are typically reserved for a general counsel." http://modern-counsel.com/2016/danielle-bernthal/. Unfortunately, the decision to have such a minuscule law department also undoubtedly played a part in the slipshod training and supervision which allowed the FACTA violations to occur across the company for presumably many years.

55.    Notably, the danger of identity theft from the FACTA violations referenced herein is much greater due to the nature of Six Flags' business. Visitors stand in cramped lines for hours and get on and off roller coasters all day;

this leads to a greater chance to lose or misplace a receipt – or have a receipt stolen.

56.    Further, Six Flags of Georgia is located in a high-crime area and there has been gang-activity in the past in the park itself, including some with the involvement of its employees.  The park has thousands of visitors per day (identification for entry to the park is not required except for season pass holders) and is spread across 297 acres.  The vast number of visitors and the enormous size of the park make it impossible for Six Flags to effectively prevent criminal activity.  In fact, in 2013 approximately 40 gang members (all dressed in matching attire and **including several Six Flags employees**) stalked and brutally beat a Six Flags' visitor with brass knuckles causing permanent and severe brain damage.[2]

### C.    Defendant's Misdeeds

57.    At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course

---

[2]The actual physical attack occurred outside the boundaries of Six Flags' property. However, the evidence at the civil trial against Six Flags showed that the beating was the culmination of a continuous string of events that were planned on Six Flags property and executed, at least in part, on Six Flags property.  From this evidence the Georgia Supreme Court confirmed that the injuries "were the result of a failure by Six Flags to exercise ordinary care to protect its invitee from unreasonable risks that Six Flags understood, and even tried to obscure from its patrons."

and scope of their agency or employment, and under the direct supervision and control of the Defendant.

58.    At all times relevant herein, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of Plaintiff and the Class.

59.    It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

60.    Consistent with Defendant's policy and procedure, Defendant knowingly and intentionally included more than the last five digits of the card number on its electronically printed receipts.

61.    The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts must be programmed to display certain information, and likewise, programmed not to display certain information.

62.    Notwithstanding the fact that it has had almost fifteen (15) years to comply, Defendant continued to issue point-of-sale receipts, which contain more than the last five digits of the card number, in direct violation of the Receipt Provision of the FCRA.

63.    Defendant continued to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

64.    Notwithstanding the fact that Defendant had years to comply with FACTA's requirements, Defendant continued to act in conscious disregard for the rights of others.

65.    In the words of Judge Richard Posner in *Redman v. RadioShack Corp.,* 768 F.3d 622, (7th Cir. 2014), Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known... ."

## V.  CLASS ACTION ALLEGATIONS

66.    This action is also brought as a class action under Fed. R. Civ. P. 23. Plaintiff proposes the following Class, defined as follows, subject to modification by the Court as required:

> All persons in the United States who, when making payment for admittance, goods, or services at a Six Flags theme park made such payment using a credit or debit card and were provided with a point of sale receipt which displayed more than the last five (5) digits of said credit or debit card within the two (2) years prior to the filing of the complaint.

67.    The named Plaintiff falls within the Class definition and is a member of the Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned, any member of the Judge's staff and immediate family.  Also excluded from the Class are persons who assert claims for personal injury, wrongful death, and/or emotional distress.

68.    The members of the Class are capable of being described without managerial or administrative problems. The members of the Class are readily ascertainable from the information and records in the possession, custody or control of Defendant or third party credit card issuers.

69.    Defendant operates amusement parks and water parks throughout the United States.  In 2016, more than 30 million people visited Defendant's parks.  Therefore, the Class is sufficiently numerous such that individual joinder of all members is impractical.  The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class can be identified through Defendant's records or Defendant's agent's records.

70.    There are common questions of law and fact that predominate over any questions affecting only the individual members of the Class.  The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative Class.

71.    This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

72.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and

fact to the Class predominate over questions that may affect individual Class members, including the following:

> a.    Whether, within the two years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last five digits of the card number was printed;
>
> b.    Whether Defendant's conduct was willful and reckless;
>
> c.    Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and
>
> d.    Whether Defendant should be enjoined from engaging in such conduct in the future.

73.    As a person who purchased goods from Defendant and received a receipt upon which more than the last five digits of the card number were printed, Plaintiff is asserting claims that are typical of the proposed Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

74.    The principal question is whether the Defendant violated § 1681c(g) of the FCRA by providing Class members with electronically printed receipts in violation of the Receipt Provision.  The secondary question is whether Defendant's lax policies and practices demonstrate a reckless or willful noncompliance with FCRA requirements.

75.    Plaintiff and the members of the Class have suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.   Absent an

injunction, the Class will continue to face additional irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant would undoubtedly continue such illegal conduct. Because of the size of the individual Class members' claims, few Class members could afford to seek legal redress for the wrongs complained of herein.

76. Defendant's defenses are and will be typical of and the same or identical for each of the members of the Class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class members' claims.

77. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

78. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## VI.  CAUSES OF ACTION

## VIOLATIONS OF 15 U.S.C. § 168l(c)(g)

79.    15 U.S.C. §1681c(g) states as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

80.    This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

81.    Defendant employs the use of said Devices for point-of-sale transactions at the various locations of Defendant.

82.    On or before the date on which this complaint was filed, Plaintiff and members of the Class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

83.    At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

84.    Notwithstanding the fact that FACTA was enacted more than fourteen (14) years ago, along with its accompanying provisions, including but not limited to the Receipt Provision, and notwithstanding Defendant's knowledge of the Receipt Provision and FACTA as a whole, Defendant knowingly, willfully, intentionally, and/or recklessly violated – and continues to violate – the FCRA and the Receipt Provision.

85.    As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the Class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the Class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

## VII. JURY DEMAND

86.    Plaintiff requests a jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

Plaintiff seeks the following:

A.    That summons be issued and Six Flags be required to answer according to law;

B.    That the Court certify the Class proposed herein, appoint the named Plaintiff as the Class Representative for the proposed Class, and appoint the undersigned counsel as Class Counsel;

C.    That Plaintiff and the Class be awarded a declaratory judgment declaring that Six Flags conduct alleged herein violated the aforementioned statutory laws;

D.    That the Court award injunctive relief in the form of an order prohibiting Six Flags from providing patrons who make purchasers using a credit or debit card with a point of sale receipt displaying more than the last 5 digits of the credit or debit card;

E.    That the Court declare and enter judgment that Six Flags willfully violated the Receipt Provision of FACTA;

F.    That Plaintiff and the Class be awarded a judgment for all available statutory damages in an amount to be determined at trial;

G.    That Plaintiff and the Class be awarded a judgment for punitive damages in an amount to be determined at trial;

H.    That Plaintiff and the Class be awarded a judgment for the attorney fees, litigation expenses and costs of suit; and

I.    That Plaintiff and the Class be awarded such other and further relief as the Court deems proper under the circumstances.

Respectfully submitted this 1st day of September, 2017.

**LACY, PRICE & WAGNER, P.C.**

By: _/s/ Cindy L. Wagner_

Cindy L. Wagner
W. Allen McDonald *(Pro Hac Vice forthcoming)*
Michael R. Franz *(Pro Hac Vice forthcoming)*
249 North Peters Road, Suite 101
Knoxville, Tennessee  37923
Telephone:  (865) 246-0800

Christopher T. Cain *(Pro Hac Vice forthcoming)*
**SCOTT & CAIN**
550 West Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone: (865) 525-2150

*Attorneys for Plaintiff*