IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HERSCHEL K. BAILEY, IV, individually, and on behalf of all others similarly situated, | ) ) ) ) NO. 1:17-cv-03336-MHC-AJB |
| Plaintiff, | ) ) Hon. Mark H. Cohen |
| v. | ) ) CLASS ACTION |
| SIX FLAGS ENTERTAINMENT CORP., a Delaware Corporation, | ) ) Complaint Filed:     09/01/17 ) Complaint Served:  09/29/17 |
| Defendant. | ) ) ) |

**DEFENDANT SIX FLAGS ENTERTAINMENT CORP.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**

### I.  INTRODUCTION

In opposing Defendant Six Flags Entertainment Corporation's ("Defendant" or "Six Flags") motion to dismiss (the "Opposition"), Plaintiff Herschel K. Bailey, IV ("Plaintiff") relies heavily on the Eleventh Circuit's ruling in *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018), where the panel found that the plaintiff had Article III standing under the very unique circumstances presented by an objector to a class settlement. Plaintiff contends *Godiva* is dispositive on whether Plaintiff has satisfied Article III's standing requirements,

ignoring that at the heart of *Godiva* was the Eleventh Circuit's ratification of the parties' $6.3 million class action settlement of FACTA claims. Indeed, the panel expressly admonished that district courts must consider standing under FACTA based on the record of each distinct case. Here, unlike the record in *Godiva*, this Court has before it the judicially noticeable fact that the first six digits of a credit card number represent the publicly available Issuer Institution Number ("IIN"), as Plaintiff concedes. Consistent with *Godiva*'s directive to conduct a case-by-case inquiry, this Court can only reach the conclusion that the exposure of these IIN digits cannot cause Plaintiff to suffer any injury, including any purported concrete injury in the form of identity theft—the harm FACTA was designed to thwart.

Even assuming Plaintiff has alleged some injury sufficient to overcome Article III's standing requirements, which is not the case, Plaintiff has not adequately stated a claim under FACTA because the statute is ambiguous as written. Plaintiff argues *Godiva* is dispositive on whether Plaintiff has adequately stated a claim under FACTA, but FACTA's ambiguity and principles of statutory construction were neither raised, briefed, nor discussed in *Godiva*. Moreover, as held by courts as recently as October 2018 in *Miranda et al. v. Magic Mountain, LLC*, Case No. BC675685 (Cal. Super. Ct. L.A. Cnty Oct. 2, 2018), another FACTA action filed against one of Six Flags' subsidiaries, FACTA is ambiguous

as written, and under the only sensible reading of FACTA, printing the first six digits of a card number—*i.e.*, publicly available IIN—on a retained receipt in no way endangers any cardholder's identity.

Plaintiff also fails to allege a single fact showing Six Flags committed a willful violation of FACTA. Plaintiff's *ipse dixit* assertions of a willful violation are insufficient in light of the two-tiered liability scheme and the formidable precedent construing the same.

For these reasons, and those set forth in Six Flags' opening memorandum (the "Motion"), Plaintiff's Complaint should be dismissed with prejudice without leave to amend.

## II.   PLAINTIFF CANNOT ESTABLISH STANDING

Plaintiff claims *Godiva* is dispositive on the issue of Article III standing, but in doing so, ignores the Eleventh Circuit's admonition that "standing in FACTA cases is 'a case- and fact- specific' question" and downplays significant factual distinctions between *Godiva* and the present action. *Godiva*, 905 F.3d at 1213; Opp. at 11-13. The primary issue in *Godiva* was the Eleventh Circuit's ratification of a $6.3 million class action settlement, where the named parties sought final approval and a single objector claimed the settlement should be set aside due to plaintiff's alleged lack of Article III standing. Importantly, the parties in *Godiva*

conceded for settlement purposes that plaintiff had Article III standing. Further, standing was neither briefed, challenged, nor substantively discussed in the district court proceedings. *See* Mot., Exs. 1-6.

In choosing not to blow up the parties' settlement, the Eleventh Circuit cautioned that courts must consider future questions of standing under FACTA based on the specific facts of each distinct case. *Godiva*, 905 F.3d at 1213. Critically, in distinguishing federal opinions around the country that have dismissed FACTA complaints based on lack of Article III standing, the panel expressed concern that district courts have accepted, without undertaking their own analyses, the proposition that printing the first six digits poses no risk of harm:

> Neither are we aware of a court that has taken a fresh look at the argument that an identity thief could use the first six digits, in combination with other available information, to access more information about a victim than would have been possible in 2007.

*Id.* at 1214.

However, that the first six digits represent the IIN is a judicially noticeable fact that is not reasonably subject to dispute. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Graham v. CitiMortgage, Inc.*, No. 1:14-CV-1476-AT, 2014 WL 12360943, at *1 (N.D. Ga. Sept. 23, 2014) ("The

court may also take judicial notice of certain facts when considering a motion to dismiss. . . . And the Court need not accept as true allegations in the complaint 'which run counter to facts of which the court can take judicial notice.'") (internal citation omitted).

With that factual predicate in place, this Court may look to the myriad of cases finding claims identical to the allegations here to rule that Plaintiff has failed to establish standing. Importantly, Plaintiff does not dispute that the first six digits of card numbers are publicly available and distributed on industry standard fraud prevention websites to help merchants validate credit or debit card transactions. *See* Opp. at 14-15.

That an American Express card is formatted slightly differently than other credit cards does not make identity theft any more likely. Indeed, Plaintiff concedes the IIN is an international standard numbering scheme set by the International Organization for Standardization ("ISO") with input from the American National Standards Institute ("ANSI"). The fact that the issuing institution and card brand on an American Express card is represented by the first four digits rather than the first six digits does not alter the salient fact that the first six digits of credit card numbers, including those of American Express cardholders,

are publicly available.[1]

Furthermore, in the aftermath of *Godiva*, courts have taken a fresh look at FACTA complaints alleging increased risk of identity theft or fraud based upon the printing of the first six digits, and have rejected amorphous allegations of harm, including in a virtually identical case filed against one of Six Flags' subsidiaries in Illinois state court: *Soto v. Great America, LLC*, Case No. 17 CH 1118 (Cir. Ct. Lake Cty. 2017). There, in November 2018, the Illinois state court dismissed with prejudice and without leave plaintiffs' putative class action complaint. The plaintiffs there advanced the following theories of harm in opposing dismissal: (1) that a "fraudster who has [the first six digits] can engage in 'phishing' communications purporting to come from that bank, in response to which many consumers may disclose the balance of the card number" (*i.e.*, phishing theory), annexed hereto as **Exhibit 1**, at 10; and (2) that "major improvements in computing power" make it easier for dumpster-diving computer wizards who

---

[1] *See, e.g.,* American Express Credit Card IIN List, https://www.creditcardvalidator.org/american-express (listing six-digit IINs for American Express cardholders); Wallet Hub, What Is A Credit Card Number? The Meaning of Each Digit, https://wallethub.com/edu/what-is-a-credit-card-number/44066/ (Jan. 14, 2018) (describing American Express IINs); 10 Signs of a Valid American Express Card, http://blog.unibulmerchantservices.com/10-signs-of-a-valid-american-express-card/ ("The AmEx card number format complies with the rules set by the American National Standards Institute (ANSI), which is the organization charged with the task of allocating issuer identification numbers (IINs) to the card networks.").

might be able to create as yet undeveloped software that divines the remaining card digits, guesses the card's expiration date, and provides either zip code information or the CVV number, all of which are required to commit fraud, one consumer at a time (*i.e.*, dumpster-diving computer wizard theory), annexed hereto as **Exhibit 2**, at 23:5-8.  The court expressly rejected these hypothetical risks of harm.  It found plaintiffs had failed to satisfy standing under Illinois law, which is anchored in federal law and, like Article III, requires "injury in fact" that is "distinct and palpable."

Nevertheless, Plaintiff maintains he suffered a concrete injury the moment he was handed his receipt, Opp. at 17, but his argument ignores the fact that printing the IIN on his receipts cannot possibly present any increased future risk of identity theft beyond the highly speculative theories rejected in *Soto* and other federal district courts analyzing the issue.  Indeed, Plaintiff has no risk of harm because he retained the receipt at issue, has maintained control over it, and changed his account information by obtaining a replacement card.  Compl. ¶ 47-49.  As explained in Six Flags' opening memorandum, there can be no risk of threatened or actual identity theft, where, as here, all that Six Flags printed on Plaintiff's receipt was the IIN and last four digits of Plaintiff's account number.

For these reasons, notwithstanding the situational-based decision in *Godiva*,

Plaintiff does not have standing to bring this suit.

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM

### A. There is No FACTA Violation Because Printing The First Six Digits of a Credit or Debit Card Number Does Not Result in Increased Risk of Identity Theft or Card Fraud

Even assuming this Court finds Plaintiff has standing, which Six Flags denies, the Complaint fails to state a claim. FACTA's truncation requirement was enacted in 2003 as part of an amendment to the FCRA, and prohibits retailers who accept credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1); *see also* Mot. at 3-4. The parties agree that FACTA's primary purpose was "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." *Id.* § 2(a)(1); *see also* Opp. at 6-8.

Plaintiff ignores that the plain language of FACTA is ambiguous as written because it would allow for the printing of truly sensitive information on the receipt; thus, under the only sensible reading of FACTA, Plaintiff could not possibly suffer a real risk of identity theft or fraud based on the printing of the first six digits of a replaced credit card number on a retained receipt. Plaintiff ignores this ambiguity, and contends without analysis that FACTA is unambiguous because *Godiva*

purportedly resolved this question. Opp. at 19. Not so. FACTA's ambiguity and principles of statutory construction were neither raised, briefed, nor discussed in *Godiva*. Thus, Plaintiff's contention that *Godiva* is dispositive on the question of whether FACTA is ambiguous is simply inaccurate.[2]

Plaintiff also claims *Broderick v. 119TCbay, LLC*, 670 F. Supp. 2d 612, 617 (W.D. Mich. 2009) and *Noble v. Nevada Checker CAB Corp.*, No. 215CV02322RCJVCF, 2016 WL 4432685, at *4 (D. Nev. Aug. 19, 2016), *aff'd*, 726 Fed. Appx. 582 (9th Cir. 2018)—cases standing for the proposition that the

---

[2] Plaintiff invokes *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375 (3d Cir. 2012) and *Tchoboian v. Fedex Office & Print Servs., Inc.*, 2011 WL 12842228, at *2 (C.D. Cal. Jan. 28, 2011) to posit that FACTA is unambiguous as written. *See* Opp. at 23 n.20. However, *Long* is not instructive on the question of ambiguity presented here because at issue was whether plaintiff's allegation that defendant "printed his credit card's expiration month, but not the year, states a claim under FACTA." Importantly, the Third Circuit in *Long* ultimately affirmed the dismissal of plaintiff's FACTA action where the retailer's alleged violation of FACTA was not objectively unreasonable and not willful. *Id.* at 374. Moreover, while *Tchoboian* did find FACTA to be unambiguous as written, the court simply assumed without analysis that FACTA was a model of clarity. Moreover, *Tchoboian* was expressly disapproved in a virtually identical case filed against one of Six Flags' California subsidiaries. *See Miranda et al. v. Magic Mountain, LLC*, Case No. BC675, Order Sustaining Demurrer With Leave to Amend (Oct. 2, 2018), at Mot., Ex. 12, at 6 ("*Tchoboian v. FedEx Office & Printing* (C.D. Cal. 2011) 2011 U.S. Dist. LEXIS 158776, also cited by plaintiffs, relied upon an analysis by another judge of the District Court (Hon. Andrew Guilford) to find the statute unambiguous. That judge determined the language was unambiguous and clearly prohibited printing the first digit of a credit card number, in addition to the last five digits. This Court disagrees, however, and concludes the statute is ambiguous on its face as a matter of grammar.").

language of the truncation requirement should be interpreted as requiring that "no person . . . shall print more [*personally identifying information*] than the last five digits of the card number or the expiration date"—should be disregarded as "outliers." Opp. at 20 n.17. Of course, the primary reason that these cases are outliers is because almost all federal courts in the past couple of years have dismissed FACTA claims on Article III grounds and have therefore not reached the issues that may be addressed under Rule 12(b)(6).

Moreover, the complex division of the Superior Court of California recently agreed with *Broderick's* statutory construction of FACTA (and by extension, *Noble*) in dismissing a virtually identical action filed against one of Six Flags' subsidiaries in an action captioned *Miranda et al. v. Magic Mountain, LLC*, Case No. BC675685 (Cal. Super. Ct. L.A. Cnty 2017). There, following oral argument held in September 2018, annexed hereto as **Exhibit 3**, the Court issued a written opinion and order in October 2018, sustaining the subsidiary's demurrer (*i.e.*, dismissed the complaint) with leave to amend. *See* Mot., Ex. 12. In so ruling, the court rejected the contention that FACTA is unambiguous as written:

> This Court disagrees [with Plaintiffs], however, and concludes the statute is ambiguous on its face as a matter of grammar. This Court is more convinced by the reasoning of [*Broderick*], which observed: "There are at least two possible constructions of Section 113 hinging on the function of the word 'more.'" If "more" is viewed as a noun, the statute would prohibit a merchant from printing anything "more"

> than the last five digits of a credit card on the receipt. Under this reading of the statute, the name of the merchant, the item purchased, and the amount charged could not be reflected on the receipt. This is an absurdity, as the District Court noted in *Broderick*. *Id.*
>
> If "more" is viewed as an adjective, "more" would modify a term missing from the statute, *i.e.* "personal identifying information." This reading is consistent with the intent of FACTA and suggests that the Court must look to Congressional intent to determine whether the statute is violated if "more than" the last five digits of a credit card are printed on a receipt—*i.e.* whether printing the first six digits and the last four digits constitute a violation of FACTA.

*Id.* at 6 (internal citations omitted). The court also took judicial notice of the fact that that the first six digits constitute publicly available IIN, as set forth in credible sources not reasonably subject to dispute, and held that printing the IIN on a receipt does not advance the statutory goal of guarding against identity theft and fraud. *Id.* at 8-9.

As set forth in *Broderick*, *Noble*, and *Magic Mountain*, the plain language of FACTA is ambiguous as written and, as such, FACTA should be interpreted in accordance with its legislative intent. Specifically, FACTA was passed to combat identity theft. However, printing the first six digits of a credit card in no way endangers any cardholder's identity, as held by virtually every court that has dismissed identical FACTA claims on Article III grounds.

Plaintiff nevertheless presents this Court with a theoretical risk of harm that would necessarily require a series of implausible and hypothetical actions by third

parties *that still would not result in any harm to Plaintiff*.  Plaintiff claims that printing the first six digits of his credit card number which are already publicly available on a retained receipt purportedly causes an increased risk of identity theft "by reducing the number of digits a thief seeing or finding the receipt would need to learn to determine or deduce his full account information."  Opp. at 21.

Plaintiff's hypothetical requires that this Court ignore the fact that Plaintiff's receipt never left his possession and that Plaintiff has already received a replacement credit card, and then assume that (1) Plaintiff carelessly discarded the receipt handed to him at the point of purchase, (2) a dumpster diver fished that receipt out of a dumpster or landfill, (3) the same dumpster diver is also a computer wizard, (4) this computer wizard has developed a new program to divine the other card digits of Plaintiff's card number along with the expiration date, zip code information, and the card's CVV number, one receipt at a time, and/or (5) the dumpster diver either uses that program or other, less sophisticated phishing means to defraud cardholders like Plaintiff one-by-one.  This type of theoretical risk of harm has been rejected by courts around the country, including in the virtually identical FACTA action filed against Six Flags' subsidiary in Illinois state court in *Soto v. Great America, LLC*, *see supra* at 6-7, as well as in cases such as *Kamal v. J. Crew Grp., Inc.*, No. 2:15-0190 (WJM), 2016 WL 6133827, at *3 (D.N.J. Oct.

20, 2016) (dismissing FACTA complaint based on the fact that plaintiff's allegations of risk would require "less sophisticated identity thieves called 'carders' or 'dumpster divers,'" to "supposedly cobble together credit card numbers from lost or discarded receipts.").

These cases show that FACTA is ambiguous, and that its statutory purpose is not furthered by prohibiting the printing of the first six digits of a card number which reflect the publicly available IIN. Accordingly, Plaintiff has failed to allege a FACTA violation, and the Complaint should be dismissed for this reason as well.

### B. Plaintiff Fails to Allege a Willful Violation

In his Opposition, Plaintiff ignores the two-tiered liability scheme of FACTA and the authorities relied upon by Six Flags. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985)—which Plaintiff does not address in his Opposition—instructs that mere knowledge of a statute is not enough to allege a willful violation because to hold otherwise would frustrate Congress' two-tiered liability scheme. Congress' deliberate choice to draw an explicit distinction between negligent and willful violations precludes FACTA from being judicially transformed into a strict liability statute, yet Plaintiff's position would do just that.

Plaintiff invokes a series of distinguishable cases to posit that allegations of mere knowledge are sufficient to allege willfulness. Opp. at 24-25. For example,

the court in *Steinberg v. Stitch & Craft, Inc.*, No. 09-60660-CIV-HUCK, 2009 WL 2589142, at *2 (S.D. Fla. Aug. 18, 2009) found plaintiff adequately alleged willfulness based on the factual allegation that defendant violated FACTA because it "did not wish to incur the additional expense of reprogramming or updating its point-of-sale equipment." No such misconduct is alleged here. The court in *Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341, 1350 (S.D. Fla. 2016), ruled plaintiff adequately alleged willfulness where plaintiff claimed "Defendant has been sued for similar violations in the past, indicating that Defendant is aware of the FACTA requirements." Plaintiff here has not alleged any past violation of FACTA by Six Flags, and none exist.[3]

Moreover, the court in *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13 CIV. 7174 KPF, 2015 WL 4486311, at *4 (S.D.N.Y. July 23, 2015) properly instructed "it is not enough to show simply that there was awareness," but held that defendant "cross[ed] the line from a level of knowledge of FACTA's requirements from which it [was] merely possible to infer a willful violation, to a level from

---

[3] Plaintiff's other authorities are equally unpersuasive. The court in *Thompson v. Rally House of Kansas City, Inc.*, No. 15-00886-CV-W-GAF, 2016 WL 9023433, at *5 (W.D. Mo. Jan. 25, 2016) did not engage in a substantive analysis of FACTA's two-tiered liability scheme in finding plaintiff had alleged willfulness. In addition, while the court in *Rosenthal v. Longchamp Coral Gables LLC*, No. 08-21757-CIV, 2009 U.S. Dist. LEXIS 59084, at *2 (S.D. Fla. June 29, 2009) permitted plaintiff's FACTA complaint to proceed, it cautioned that "denying the motion to dismiss does not mean that the Court finds willfulness is established."

which it is plausible to infer such a violation" because plaintiff alleged defendant's "insurance contract specifically excluded violations of FACTA from coverage," suggesting defendant's specific knowledge of FACTA.  Plaintiff here has alleged nothing similar, instead offering conclusory allegations that FACTA was "widely publicized," and that Six Flags generally knew of "the importance of the truncation requirements" through other means, including that Six Flags "was contractually prohibited" by the card brands from "print[ing] more than the last five digits of a credit or debit card number."  Compl. ¶¶ 18, 30, 38.

Plaintiff's allegations constitute precisely the type of conclusory allegations that *Iqbal* and *Twombly* held insufficient as a matter of law and which have been deemed insufficient under the FCRA and FACTA.  *See* Def's Mot. at 24-25.  Indeed, accepting Plaintiff's allegations as sufficient would render meaningless Congress' distinction between inadvertent or negligent violations and "willful" violations, and functionally turn FACTA into a strict liability statute.

Accordingly, Plaintiff has failed to allege a willful violation of FACTA.

## IV.     CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice and without leave to amend.

Dated: December 6, 2018

        By: /s/ Spencer Persson
            SPENCER PERSSON

**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
spencer.persson@nortonrosefulbright.com

Gerald B. Kline
Georgia Bar No. 425175
**COHEN POLLOCK MERLIN TURNER, P.C.**
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone:  (770) 858-1288
Facsimile:   (770) 858-1277
gkline@cpmtlaw.com

*Attorneys for Defendant*
*Six Flags Entertainment Corp.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia. Counsel hereby states that this pleading has been typed in Times New Roman 14 point.

This 6th day of December, 2018.

Dated: December 6, 2018

                        By: /s/ Spencer Persson
                              SPENCER PERSSON

**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:   (213) 892-9200
Facsimile:   (213) 892-9494
spencer.persson@nortonrosefulbright.com

Gerald B. Kline
Georgia Bar No. 425175
**COHEN POLLOCK MERLIN TURNER, P.C.**
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone:   (770) 858-1288
Facsimile:   (770) 858-1277
gkline@cpmtlaw.com

*Attorneys for Defendant*
*Six Flags Entertainment Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2018, I served the foregoing **DEFENDANT SIX FLAGS ENTERTAINMENT CORP.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS** with the Court using the CM/ECF system which will send notification of such filing to the following:

Cindy Wagner
W. Allen McDonald (admitted Pro Hac Vice)
Michael R. Franz (admitted Pro Hac Vice)
LACY, PRICE & WAGNER, P.C.
249 North Peters Road, Suite 101
Knoxville, Tennessee 37923
Telephone: (865) 246-0800

Christopher T. Cain (admitted Pro Hac Vice)
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, Tennessee 27902
Telephone: (865) 525-2150

*Attorneys for Plaintiff Herschel K. Bailey, IV*

This 6th day of December, 2018.

             By: /s/ Gerald B. Kline
                Gerald B. Kline
                Georgia Bar No. 425175
                Counsel for Defendant