IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HERSCHEL K. BAILEY, IV, individually, and on behalf of all others similarly situated, | ) ) ) | NO. 1:17-cv-03336-MHC-AJB |
| Plaintiff, | ) ) | Hon. Mark H. Cohen |
| v. | ) ) ) | CLASS ACTION |
| SIX FLAGS ENTERTAINMENT CORP., a Delaware Corporation, | ) ) ) | Complaint Filed:    09/01/17<br>Complaint Served: 09/29/17 |
| Defendant. | ) ) | |

**DECLARATION OF TOM IVEN IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
PERSONAL JURISDICTION**

I, Tom Iven, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the Senior Vice President of U.S. Park Operations at Six Flags Entertainment Corp. I make this Declaration in support of Six Flags Entertainment Corp.'s ("Six Flags") motion for partial summary judgment regarding personal jurisdiction. I have personal knowledge of the matters set forth herein and can and do competently testify thereto.

2. On August 14, 2019, I provided deposition testimony as a Federal Rule

of Civil Procedure 30(b)(6) witness for Six Flags. Plaintiff's counsel asked me very little about Six Flags' operations in the State of Georgia and its day-to-day relationship with subsidiary parks.

3. Six Flags is a Delaware corporation with a principal place of business located in Grand Prairie, Texas. Six Flags does not do business and does not have a registered agent in the State of Georgia. Further, Six Flags does not have any offices, bank accounts, mailboxes, telephone listings, or employees in the State of Georgia. Nor does Six Flags maintain any records in the State of Georgia.

4. During my deposition, I testified that Six Flags, as the parent company, has an ongoing relationship with each of its subsidiary parks and manages the operation of those parks at the corporate level. In addition, the subsidiary park presidents report to me. However, I was not asked about day-to-day operations of each park. Day-to-day operations are handled and carried out at the park level without ongoing involvement from Six Flags.

5. Thus, SFOG handles the day-to-day operations of Six Flags Over Georgia and White Water Atlanta. These operational matters include the obvious, such as staffing, employment, maintenance, and customer support, but also important, strategic decision-making relating to the parks. The President and directors of SFOG create business plans that outline their vision for the SFOG parks,

including which type of new rides and attractions would best position the parks moving forward, and the marketing and advertising initiatives, including sponsorships, all of which are designed to drive attendance. Six Flags' subsidiary parks are most successful when this sort of strategic thinking is carried out at the park level.

6. Certainly, and as I testified to in my deposition, none of that is to say that Six Flags does not offer many services as part of its ongoing corporate relationship with subsidiary parks. Six Flags provides SFOG and the other subsidiary parks with information regarding which sorts of rides and attractions have been successful at various locations to assist them in making their strategic decisions. Six Flags also offers shared services to its subsidiary parks where it simply would not make sense to handle those services at each location.

7. For example, our legal needs are lean enough that Six Flags provides the services of its four person legal department to all of its subsidiaries. This centralized and coordinated approach allows Six Flags to uniformly respond to potentially duplicative legal matters, such as the four FACTA matters pending across the country. To the extent a legal matter concerns only a single subsidiary parks, legal fees associated with that particular legal matter would be allocated to that particular park.

8. Six Flags also obtains insurance coverage for all parks, taking advantage of the economies of scale created by shared insurance coverage. It would be considerably more expensive for each subsidiary to negotiate for its own coverage.

9. Six Flags also takes the lead on projects that impact all subsidiary parks. Transitioning the point of sale systems to EMV technology, including both the hardware and the software needed to operate those systems, was one such project. Making the change across all parks created savings, both at the time of the change and in the future for replacement parts and ongoing software licensing. While SFOG or the other parks technically could have opted out of this change, just as they could insist on their own legal counsel or insurance, there was no reason for them to do so. Indeed, Six Flags coordinated this project in response to the mandate issued by all major card brand issuers, which required that merchants upgrade their point of sale systems to EMV technology to make card transactions more secure. This centralized approach also ensured uniform compliance with the mandate by the deadline.

10. In 2018, revenues from Six Flags Over Georgia and White Water Atlanta accounted for approximately seven percent of Six Flags' total annual revenue. This percentage has been generally consistent over time.

Dated: August 27, 2019

By: _____
Tom Iven