## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HERSCHEL K. BAILEY, IV, individually, and on behalf of all others similarly situated, | ) ) ) | No. 1:17-cv-03336-MHC-AJB |
| | ) | |
| Plaintiff, | ) | Hon. Mark H. Cohen |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| SIX FLAGS ENTERTAINMENT CORP., a Delaware Corporation, | ) ) | Complaint Filed:     09/01/17 Complaint Served:   09/29/17 |
| | ) | |
| Defendant. | ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

1.      Six Flags' Annual Reports for 2017-2019 are available on the internet at  https://investors.sixflags.com/financial-information/annual-reports.  Declaration of W. Allen McDonald, ¶25(a).

**RESPONSE**:  Disputed.  While Six Flags' Annual Reports for 2017-2018 are available on the internet at https://investors.sixflags.com/financial-information/annual-reports, Six Flags' Annual Report for 2019 has not yet been published.

2.      Nowhere in Six Flags' Annual Reports is it stated that SFEC "consults" with various Six Flags' parks. Rather, according to the Annual Reports,

the parks "provide similar products and services through a similar process to the same class of customer through a consistent method" which are ostensibly established by SFEC. Declaration of W. Allen McDonald, ¶26.

**RESPONSE**:  Six Flags does not dispute that the Annual Reports contain the quoted statement, but disputes the characterization of the statement to the extent Plaintiff contends it serves as evidence that SFEC does not consult with various Six Flags' parks in establishing such processes.  (Dkt. No. 80-5 at ¶ 4.)

3.    The Annual Reports further state, "Local advertising, ticket sales, community relations and hiring and training of personnel are the responsibility of individual park management in coordination with corporate support teams." Declaration of W. Allen McDonald, ¶27.

**RESPONSE**:  Undisputed.

4.    The Annual Reports go on to state that Six Flags will "relocate rides among parks to provide fresh attractions." Declaration of W. Allen McDonald, ¶28.

**RESPONSE**:  Undisputed.

5.    Because Six Flags Over Georgia II, L.P. ("SFOG") could not unilaterally relocate a ride to another park or cause another park's ride to be relocated to SFOG, it appears such decisions are made by SFEC, but Plaintiff's

counsel has not been able to conduct the necessary confirmatory discovery. Declaration of W. Allen McDonald, ¶29.

**RESPONSE**:  Disputed.  SFOG determines what it believes the parks need to increase attendance, including creating plans for new rides and attractions that would be successful at the SFOG parks, and makes these decisions in consultation with SFEC.  (Dkt. No. 80-5 at ¶ 6.)

6.     SFEC's Annual Reports do not reflect that SFEC provides "shared services" to its parks. Based on W. Allen McDonald's experience, which includes 11+ years as in-house counsel for a publicly-traded company, he understands the term "shared services" to be more than simply having an internal or centralized department which provides services to subsidiaries. *See* https://www.genpact.com/insight/blog/eight-ways-why-centralization-is-not-shared-services. However, Plaintiff's counsel have not been able to conduct discovery on how SFEC defines the term "shared services." Declaration of W. Allen McDonald, ¶30.

**RESPONSE**:  Disputed.  There is insufficient evidence to support this statement.  Mr. McDonald's personal experience with respect to shared services does not constitute sufficient evidence under L.R. 56.1(B)(1) and does not negate the fact that SFEC offers many shared services as part of its ongoing corporate

relationship with subsidiary parks.  (Dkt. No. 81 at ¶¶ 6-9.)

7.     Shared services models allow flexible sourcing from external providers, performance monitoring and typically require business units be charged based on actual usage of service – none of which appear to be part of SFEC's operations based on my investigation through reviewing SFEC's Annual Reports. However, Plaintiff's counsel not been able to conduct the necessary confirmatory discovery on this issue. Declaration of W. Allen McDonald, ¶31.

**RESPONSE**:  Disputed.  There is insufficient evidence to support this statement as required by L.R. 56.1(B)(1), particularly with respect to the suggestion that SFEC does not offer shared services, which is based entirely on speculation.

8.     Emails purportedly sent by the Six Flags Over Georgia theme park in 2015 and 2016 list its physical address as the same address in Texas as SFEC, 924 Avenue J East, Grand Prairie, Texas 75050. Declaration of W. Allen McDonald, ¶32 and Exhibit 2 to Declaration.

**RESPONSE**:  There is insufficient evidence to support this statement as required by L.R. 56.1(B)(1), as the exhibits are not properly authenticated and whether a promotional message from "Six Flags Over Georgia sixflagsovergeorgia@newsletter.sixflags.com" and other parks is sent from

centrally maintained mailing lists is irrelevant to the jurisdictional question at issue.

9.      Emails sent in 2017 and 2019 advertising the Six Flags Over Georgia theme park explicitly state: "This email message was sent by SFEC at 924 Avenue J East, Grand Prairie, Texas 75050." Declaration of W. Allen McDonald, ¶23 and Exhibit 2 to Declaration.

**RESPONSE**:   There is insufficient evidence to support this statement as required by L.R. 56.1(B)(1), as the exhibits are not properly authenticated and whether a promotional message from "Six Flags Over Georgia sixflagsovergeorgia@newsletter.sixflags.com" and other parks is sent from centrally maintained mailing lists is irrelevant to the jurisdictional question at issue.

10.     The receipt that Plaintiff received at the Six Flags Over Georgia park in July 2017 with the first 6 and last 4 digits of his account number directs patrons to a website ostensibly controlled by SFEC, http://www.sixflagsjobs.com. This website (patrons are transferred a website http://www.sixflags.com/jobs) advertises career possibilities for "corporate jobs" at SFEC as well as available jobs at Six Flags' theme parks in the United States. As of September 11, 2019, corporate jobs included an IT Product Manager, an International Director of Operations, and an

International Director of Marketing and Sales, all based at SFEC's headquarters in Grand Prairie, Texas. Declaration of W. Allen McDonald, ¶34 and Exhibit 4 to Declaration.

**RESPONSE**:  Six Flags does not dispute that the receipt contained in Exhibit 3, which Plaintiff received at Six Flags Over Georgia in July 2017, directs patrons to the website, http://www.sixflagsjobs.com, but adds that the shared website shows information about jobs at every Six Flags park in the country, such that all Six Flags jobs opportunities are housed and easily located in one hub.

11.    Under the description of the Six Flags Membership program, members pay a monthly fee which entitles them to benefits under the program, including unlimited entry at all Six Flags' theme parks in the United States. Plaintiff's counsel's investigation revealed that the membership program's rules are the same no matter which park it is purchased from. The descriptions of the membership program on Six Flags' website for Six Flags Over Georgia and Six Flags Over Texas are identical, which suggests the membership program is controlled by SFEC. Declaration of W. Allen McDonald, ¶35.

**RESPONSE**:  Disputed.   There is insufficient evidence to support this statement as required by L.R. 56.1(B)(1), particularly with respect to the suggestion that SFEC controls the membership program, which is based entirely on

speculation.

12.     Further, because membership includes entry to all parks, the membership fees must be allocated across the parks by SFEC such that SFEC collects revenue from members located in Georgia. Plaintiff's counsel been able to conduct discovery on the membership program, at this time. Declaration of W. Allen McDonald, ¶36.

**RESPONSE**:  Disputed.   There is insufficient evidence to support this statement as required by L.R. 56.1(B)(1), particularly with respect to the suggestion that membership fees are allocated across the parks by SFEC and collects revenue from members located in Georgia, which is based entirely on speculation.

13.     SFEC operates 24 properties inside the United States. [Iven Dep., at 9; Doc. 80-3, p. 14]

**RESPONSE**:  Disputed.  The evidence cited does not support the statement. Instead, at his deposition, Mr. Iven testified there are "24 park presidents."  (Dkt. No. 80-3 (Iven Dep.) at 9:13-20.)

14.     SFEC Senior Vice President of Domestic Park Operations, Tom Iven, is responsible for the management of all SFEC's parks in the U.S. [Iven Dep., at 9; Doc. 80-3, p. 14]

**RESPONSE**:  Undisputed.

15.    The park presidents report to Iven, who works at the Texas headquarters. [Iven Dep., at 9, 11; Doc. 80-3, pp. 14, 16)]

**RESPONSE**:  Undisputed.

16.    SFEC directed and controlled installation of new payment terminals at the parks in 2016, 2017. [Iven Dep., at 81; Doc. 80-3, p. 86]

**RESPONSE**:   Six Flags does not dispute that SFEC led the project to transition all subsidiary parks to EMV technology, which entailed the installation of new payment terminals purchased by each park, but adds that SFEC did so as a part of its shared services given that it (1) created savings, at the time and in the future for replacement parts and ongoing software licensing; and (2) was done in response to the mandate by all major card brand issuers requiring merchants to upgrade their point of sale systems to EMV technology to make card transactions more secure.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 80-3 (DeCost Dep.) at 44:20-45:2; Dkt. No. 81 at ¶ 9.)  SFOG could have opted out of the transition, but elected not to do so.

17.    SFEC admits that its prior filings indicate that it printed the Plaintiff's receipts. [Iven Dep., at 67; Doc. 80-3, p. 72]

**RESPONSE**:   Disputed.  In a prior filing, Six Flags merely stated, "Here,

plaintiff made purchases at Six Flags and was provided electronically printed receipts that included the first six digits of the card account number in addition to the final four digits." (Dkt. No. 80-3 (Iven Dep.) at 67:3-7.) However, Plaintiff concedes that the purported FACTA violation **actually** arises from "receipts [that] were printed at the SFOG park [in Georgia] that failed to properly truncate card numbers and expiration dates in compliance with FACTA." (Dkt. No. 88 at p. 19.) Plaintiff also admits "Plaintiff incurred a charge for $29.65 dollars for goods **purchased at** Defendant's **Six Flags Over Georgia** theme park" and "[u]pon making the payment" for "said goods," Plaintiff "was provided with an electronically-printed receipt." (Dkt. No. 1 at ¶¶ 46-48.)

18.   When it was discovered that there was a problem with the receipts being printed by the EMV (Eurocard, MasterCard, Visa) point of sale devices, it was SFEC that directed that it be stopped in every Six Flags' park. [Iven Dep., at 81; Doc. 80-3, p. 86]

**RESPONSE**:   Six Flags does not dispute that SFEC took the lead on addressing issues arising out of the parks' transition to EMV technology, but adds that Omnico was responsible for resolving the issue related to numbers printed on receipts. (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 80-3 (DeCost Dep.) at 36:21-37:3; Dkt. No. 81 at ¶ 9.)

19.    The individual parks played no role in the resolution of the problem. [DeCost Dep., at 38; Doc. 80-3, p. 171]

**RESPONSE**:  Disputed.  The evidence cited does not support the statement. Instead, at his deposition, Mr. DeCost testified that the "individual parks . . . did the testing for us" in resolving the issue related to numbers printed on receipts. (Dkt. No. 80-3 (DeCost Dep.) at 38:10-17.)

20.    SFEC directed and controlled the resolution of the problem of point-of-sale devices printing expiration dates in Georgia and other parks. [Iven Dep., at 81-82; Doc. 80-3, p. 86-87]

**RESPONSE**:   Six Flags does not dispute that SFEC took the lead on addressing issues arising out of the parks' transition to EMV technology, but adds that Omnico was responsible for resolving the issue related to numbers printed on receipts.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 80-3 (DeCost Dep.) at 36:21-37:3; Dkt. No. 81 at ¶ 9.)

21.    SFEC holds a leasehold interest (as a limited partner) in the property on which Six Flags Over Georgia is located. [Iven Dep., at 92; Doc. 80-3, p. 97]

**RESPONSE**:  Undisputed.

22.    Stephen DeCost has been SFEC's point of sale manager for six years, responsible for the maintenance, support, deployment, and enhancements of all of

the point of sale and payment systems for all of the in- park payments with point of sale systems in North America parks. [DeCost Dep., at 6-7; Doc. 80-3, p. 139-40].

**RESPONSE**:  Undisputed.

23.    Mr. DeCost was in charge of testing point of sale and payment systems at the Six Flags parks. [DeCost Dep., at 12; Doc. 80-3, p. 145]

**RESPONSE**:  Undisputed.

24.    "EMV is a technology that inserts a gold chip into your card . . . and whenever you insert that card into a device, it is activated. . . . [I]t creates an algorithm that everything on that card has to pass. [DeCost Dep., at 24; Doc. 80-3, p. 157].

**RESPONSE**:  Undisputed.

25.    The project to make sure that the devices at the parks had EMV capability was undertaken by SFEC. [DeCost Dep., at 25; Doc. 80-3, p. 158].

**RESPONSE**:  Six Flags does not dispute that SFEC coordinated the EMV technology upgrade for all parks, but adds that SFEC took the lead on this project as a part of its shared services.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 81 at ¶ 9.)

26.    SFOG merely "assisted in the testing of the deployment" of the new EMV capability. [DeCost Dep., at 26; Doc. 80-3, p. 159]

**RESPONSE**:  Six Flags disputes the characterization of this statement to the

extent Plaintiff suggests SFOG had no role in the rollout of the new EMV capability.

27.   The individual parks were responsible for testing the software and SFEC interpreted the test results. [DeCost Dep., at 30-31; Doc. 80-3, p. 163-64]

**RESPONSE**:  Undisputed.

28.   It was SFEC's decision as to whether the results met the expectations. [DeCost Dep., at 30-31; Doc. 80-3, p. 163-64]

**RESPONSE**:  Six Flags does not dispute that SFEC coordinated the EMV technology upgrade for all parks, but adds that SFEC took the lead on this project as a part of its shared services.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 81 at ¶ 9.)

29.   SFEC instructed the parks that they needed to do this and expected the parks would comply. "It was a mandate across the entire country." [DeCost Dep., at 27-28; Doc. 80-3, p. 160-61]

**RESPONSE**:  Disputed.  While SFEC coordinated the EMV technology upgrade for all parks in response to a mandate by card issuers, SFOG could have opted out of the EMV transition, but it chose not to do so.  (Dkt. No. 80-3 (Iven Dep.) at 82:10-21; id. (Harris Dep.) at 27:8-22, 13:13-18, 35:24-36:6; id. (DeCost Dep.) at 26:21- 28:6, 30:7-18, 40:3-10, 44:3-6; Dkt. No. 80-5 at ¶ 7; Dkt. No. 81 at ¶ 9.)

30.    SFEC deployed the software and SFOG had no discretion as to what software was used. [DeCost Dep., at 29; Doc. 80-3, p. 162]

**RESPONSE**:  Six Flags does not dispute that SFEC chose the software to be used for EMV technology, but adds that it did so as a part of its shared services, as doing so created savings in ongoing software licensing.  (Dkt. No. 80-2 at ¶ 17.)

31.    SFEC decided how many terminals to replace at each park [DeCost Dep., at 45; Doc. 80-3, p. 178]

**RESPONSE**:  Six Flags does not dispute that SFEC decided how many terminals to replace at each park, but adds that each park paid for its new payment terminals.  (Dkt. No. 80-3 (DeCost Dep.) at 44:20-45:2.)

32.    SFOG was the pilot for the EMV roll-out and POS devices [DeCost Dep., at 54; Doc. 80-3, p. 187]

**RESPONSE**:  Undisputed.

33.    SFOG park was the first park to receive the roll-out from SFEC, getting it roughly three weeks before any of the other parks got it, and began testing the EMV in concert with SFEC [Harris Dep., at 28; Doc. 80-3, p. 237]

**RESPONSE**:  Undisputed.

34.    When the parks were testing the deployment, the terminals deployed by SFEC printed out actual receipts without masking the correct digits. [DeCost

Dep., at 33-35; Doc. 80-3, p. 166-68]

**RESPONSE**:  Six Flags does not dispute that receipts were printed during deployment, but adds that Omnico was responsible for the coding that controlled the number of digits printed on receipts.  (Dkt. No. 80-3 (DeCost Dep.) at 31:13-24.)

35.    After the EMV roll-out, some receipts continued to print expiration dates. DeCost Dep., at 40; Doc. 80-3, p. 173].

**RESPONSE**:  Six Flags does not dispute that expiration dates were printed on receipts for a period of time as part of the transition to EMV technology, but adds that the interplay between the Omnico software and new hardware needed for the transition caused the expiration dates to be printed.  (Dkt. No. 80-3 (DeCost Dep.) at 40:11-24, 42:19-43:10.)

36.    This occurred when DeCost's team at SFEC decided to turn off EMV at some locations and go back to swiping cards. And, when SFEC did that, there was a bug in the code, printing the expiration dates. [DeCost Dep., at 40-41; Doc. 80-3, p. 173-74]

**RESPONSE**:  Six Flags does not dispute that expiration dates were printed on receipts for a period of time as part of the transition to EMV technology, but adds that the interplay between the Omnico software and new hardware needed for

the transition caused the expiration dates to be printed. (Dkt. No. 80-3 (DeCost Dep.) at 40:11-24, 42:19-43:10.)

37.    SFEC resolved the expiration date issue [DeCost Dep., at 42; Doc. 80-3, p. 176] [Harris Dep., at 43; Doc. 80-3, p 252].

**RESPONSE**:   Six Flags does not dispute that SFEC took the lead on addressing issues arising out of the parks' transition to EMV technology, but adds that Omnico was responsible for resolving the issue related to numbers printed on receipts.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 80-3 (DeCost Dep.) at 36:21-37:3; Dkt. No. 81 at ¶ 9.)

38.    New mandatory procedures are being put in place by SFEC at all parks regarding FACTA compliance. [DeCost Dep., at 52-53; Doc. 80-3, p. 85- 86]

**RESPONSE**:  Undisputed.

39.    SFEC sets the terms for parks to use some credit cards. [DeCost Dep., at 57; Doc. 80-3, p. 190]

**RESPONSE**:   Six Flags does not dispute that SFEC enters into contracts with major credit card issuers for all parks, but adds that it does so as a part of its shared services to take advantage of economies of scale.  (Dkt. No. 80-2 at ¶ 17.)

40.    SFEC rolled out the transition at all affiliated theme parks to EMV/chip reader technology from about October 14, 2016 to June 15, 2017,

[DeCost Dep., at 61; Doc. 80-3, p. 194]

**RESPONSE**:  Undisputed.

41.    SFEC was in charge of inspecting or testing to insure card numbers were being masked [DeCost Dep., at 67; Doc. 80-3, p. 200]

**RESPONSE**:  Six Flags does not dispute that SFEC coordinated the EMV technology upgrade for all parks, but adds that SFEC took the lead on this project as a part of its shared services.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 81 at ¶ 9.)

42.    SFOG park was the first park to receive the roll-out from SFEC, getting it roughly three weeks before any of the other parks got it, and began testing the EMV in concert with SFEC [Harris Dep., at 28; Doc. 80-3, p. 237]

**RESPONSE**:  Undisputed.

43.    SFEC directed SFOG "to insure that all the credit card transactions went through successfully and that we got credit for every penny of those credit transactions." [Harris Dep., at 28; Doc. 80-3, p. 237]

**RESPONSE**:  Undisputed.

44.    SFOG wasn't asked by SFEC to review the receipts and determine whether they were properly masked. [Harris Dep., at 28-29; Doc. 80-3, p. 237-38]

**RESPONSE**:  Undisputed.

45.    SFOG played no role in the resolution of that issue, as whatever

corrections were made to the system were done by SFEC [Harris Dep., at 34; Doc. 80-3, p. 243]

**RESPONSE**:  Disputed.  The evidence cited does not support the statement. Instead, at his deposition, Mr. DeCost testified that the "individual parks . . . did the testing for us" in resolving the issue related to numbers printed on receipts. (Dkt. No. 80-3 (DeCost Dep.) at 38:10-17.)

46.    The decision to have new payment terminals installed or replaced at SFOG was made by SFEC [Harris Dep., at 35-36; Doc. 80-3, p. 244-45]

**RESPONSE**:   Six Flags does not dispute that SFEC transitioned all subsidiary parks to EMV technology, which entailed the installation of new payment terminals purchased by each park, but adds that SFEC took the lead on this project as a part of its shared services.  (Dkt. No. 80-2 at ¶¶ 17-19; Dkt. No. 80-3 (DeCost Dep.) at 44:20-45:2; Dkt. No. 81 at ¶ 9.)

47.    SFOG is expected to follow the directions of SFEC [Harris Dep., at 36; Doc. 80-3, p. 245]

**RESPONSE**:   Six Flags disputes this statement, as Plaintiff selectively quotes from Mr. Harris' deposition.  Mr. Harris testified that SFOG had the discretion to refuse to follow SFEC's request that SFOG replace its payment terminals in connection with the EMV technology upgrade, but chose not to do so.

(Dkt. No. 80-3 (Harris Dep.) at 35:24-36:22.)

48. SFOG has no contractual relationship with Discover, American Express or Bank of America that govern the acceptance of bank or debit cards, as those contracts are between SFEC and the credit card companies [Harris Dep., at 40; Doc. 80-3, p. 249].

**RESPONSE**: Six Flags does not dispute that SFEC enters into contracts with major credit card issuers for all parks, but adds that it does so as a part of its shared services to take advantage of economies of scale. (Dkt. No. 80-2 at ¶ 17.)

Dated: October 7, 2019

By: /s/ Spencer Persson
    SPENCER PERSSON

**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
spencer.persson@nortonrosefulbright.com

Gerald B. Kline
Georgia Bar No. 425175
**COHEN POLLOCK MERLIN TURNER, P.C.**
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone:  (770) 858-1288
Facsimile:   (770) 858-1277
gkline@cpmtlaw.com

*Attorneys for Defendant Six Flags Over Georgia, Inc., incorrectly served and sued as Six Flags Entertainment Corp., and Six Flags Entertainment Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this pleading complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia.  Counsel hereby states that this pleading has been typed in Times New Roman 14 point.

This 7th day of October, 2019.

Dated: October 7, 2019

By: <u>/s/ Spencer Persson</u>
    SPENCER PERSSON

**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
spencer.persson@nortonrosefulbright.com

Gerald B. Kline
Georgia Bar No. 425175
**COHEN POLLOCK MERLIN TURNER, P.C.**
3350 Riverwood Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone:   (770) 858-1288
Facsimile:    (770) 858-1277
gkline@cpmtlaw.com

*Attorneys for Defendant Six Flags Over Georgia, Inc., incorrectly served and sued as Six Flags Entertainment Corp., and Six Flags Entertainment Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2019, I served the foregoing

**DEFENDANT'S   RESPONSE   TO   PLAINTIFF'S   ADDITIONAL**

**STATEMENT OF FACTS** with the Court using the CM/ECF system which will

send notification of such filing to the following:

Cindy Wagner
W. Allen McDonald (admitted Pro Hac Vice)
Michael R. Franz (admitted Pro Hac Vice)
LACY, PRICE & WAGNER, P.C.
249 North Peters Road, Suite 101
Knoxville, Tennessee 37923
Telephone: (865) 246-0800

Christopher T. Cain (admitted Pro Hac Vice)
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, Tennessee 27902
Telephone: (865) 525-2150

Drago Cepar Jr.
1900 The Exchange
Suite 490
Atlanta, Georgia 30339

*Attorneys for Plaintiff Herschel K. Bailey, IV*

This 7th day of October, 2019.

By:   /s/ Spencer Persson
            Spencer Persson
            Admitted *Pro Hac Vice*
            Counsel for Defendant